HAMITER, Justice.
 

 Plaintiff, Granville H. Williams, sued to recover the sum of $71,273.50, allegedly due him for conducting under contract logging and hauling operations respecting timber owned by defendant, Robert G. Robinson, in Nicaragua. Answering, defendant recognized the claim to the extent of $39,373.90, pleaded that the obligation had been compensated as a result of advances made by him to plaintiff, and in re-convention he demanded judgment for excess advances totaling $3264.81.
 

 After the joining of issue the case was referred, under the provisions of Act No. 119 of 1934, to the Commissioner of the Civil District Court for the Parish of Orleans (then Honorable Luther E. Hall) before whom a protracted trial was held. In a lengthy written report that official recomended that there be judgment in favor of plaintiff in the sum of $30.59, together with legal interest and costs. The recommendation was based on a finding that plaintiff is entitled to credits totaling $39,993.90, but that he should be charged with $39,963.31, which is due and owing to defendant.
 

 Exceptions to the report were filed by plaintiff. The district court, however, overruled these exceptions and rendered judgment in accordance with the recommendation. From the judgment plaintiff ap
 
 *135
 
 pealed. Defendant neither appealed nor answered plaintiff’s appeal.
 

 The record discloses that in 1939 the defendant owned the pine timber on approximately 13,832 acres of land in the Republic of Nicaragua, and was desirous of converting it into salable lumber. To this end he arranged with one Frank E. Nolen for the establishing and operating there of a saw mill to manufacture the lumber, and contracted also with this plaintiff for conducting the necessary logging and hauling operations. The agreement with Nolen was wholly verbal; that with plaintiff was partly in writing and partly verbal.
 

 Under the terms of a written contract dated April 20, 1939, plaintiff agreed to place at the logging site certain described trucks, tractors and other equipment and to deliver to the saw mill not less than one million feet of logs per month. For cutting and hauling the timber he would receive $10 per thousand feet.
 

 Other pertinent provisions of the written contract between plaintiff (party of the first part) and defendant (party of the second part) were the following:
 

 “It is mutually agreed and understood that party of the second part will pay the freight charges and passenger fares for returning the equipment and employees of party of the first part in case that for any reason the party of the second part should decide to discontinue the operation of' the sawmill in Nicaragua.
 
 * * *
 

 “It
 
 is understood that this logging contract will
 
 cover
 
 only such sizes of timber as are suitable for cutting into 30 cubic average sawn timbers, or into 9 x 9 30 lineal average and better, or into 6 x 6 30 lineal average or better, the latter two sizes are to be cut at the option of the party of the second part.
 

 “In order for the party of the first part to clear up all indebtedness on his equipment and place it in first class repair, and in order that he should buy approximately $1000.00 worth of spare parts to carry with him to Nicaragua, the party of the second part agrees to furnish party of the first part with funds necessary to defray these expenses in an amount not exceeding $3000.-00, said money to be furnished to party of the first part when and as needed. Party of the second part also agrees to advance to party of the first part all freight charges on his equipment from New Orleans to Nicaragua, and consular and duties, if any, and passenger fares for his employees, said advances to be made as needed. Party of the first part agrees to repay party of the second part for such monies so advanced at the rate of $2.00 per thousand on quantity cut each day of settlement until the full amount so advanced has been completely liquidated.
 

 “Party of the second part agrees to furnish to party of the first part all truck and tractor parts, gasoline, oil, and other supplies that party of the first part might de
 
 *137
 
 cide to order through party of the second part at cost and without profit.”
 

 After the confection of this written contract, the record discloses, it became apparent that defendant would have to finance both Nolen and plaintiff in the conducting of their respective operations in Nicaragua.' Accordingly, the three agreed verbally that defendant would send supplies and funds to Nolen who in turn would furnish plaintiff, at his request, those needed by him.
 

 The logging and hauling operations began in May, 1939, and were discontinued about April 15, 1940, at which time all of the 30 cubic average timber had been cut. During that period plaintiff logged and hauled under the contract 3,937,390 feet of timber for which, at $10 per thousand feet, admittedly he was entitled to receive $39,-373.90.
 

 As stated in the brief of his counsel, plaintiff has acquiesced in the Commissioner’s disallowance (maintained by the district court) of many of the items of the claim alleged on in his action. He urges here, however, that he should recover, under the written contract, return fares for his employees in the sum of $500 and return freight on his equipment of $2051.87. Further, plaintiff contends that charges claimed by defendant against him totaling $22,435.36 (referred to hereafter as the Nicaraguan account) should have been disallowed on two grounds: (1) These charges were not itemized in defendant’s answer and reconventional demand, and defendant did not allege with any definiteness his purported arrangement with No-len; and (2) any indebtedness of plaintiff for these charges was to Nolen and not to defendant.
 

 That part of plaintiff’s claim covering return fares for his employees and return freight on the equipment is grounded on a provision of the written contract stipulating for payment thereof by defendant “in case that for any reason the party of the second part should decide to discontinue the operation of the saw mill in Nicaragua.” Respecting these items the Commissioner, in his report, observed:
 

 “1 find that the operation of the sawmill was discontinued by the defendant, Robinson, on or about April 15, 1940. All witnesses agree that by this time all of the 30 cubic average timber had been cut although there were 4 or 5 million feet of smaller size timbers left on the tract. I find it undisputed that-Robinson discontinued operation of the sawmill for the reason that there were no more 30 cubic average timbers left to cut and that he did not desire the smaller sizes to be logged.
 

 “It will be remembered that the contract provided ‘that this logging contract will cover only such sizes of timber as are suitable for cutting into 30 cubic average sawn timbers, or into 9 x 9 30 lineal average or better, or into 6 x 6 30 lineal average or better, the latter two sizes are to be cut at the option of (Robinson)’.
 

 
 *139
 
 “Plaintiff does not challenge defendant’s l-ight to discontinue the sawmill. What he asks is payment for the return freight and passenger fares under the first quoted paragraph of the contract.
 

 “It is clear to me that this paragraph has reference only to a discontinuance of the operation of the sawmill for any reason prior to the completion of the contract. It has, in my opinion, no relevancy to a discontinuance of the sawmill’s operation upon completion of the contract.
 

 “The contract here was completed and terminated when all the 30 cubic average timbers had been cut and upon Robinson’s exercising his option not to cut the smaller sizes.
 

 “I am therefore of the opinion that plaintiff’s claim for return passenger fares and return freight should be disallowed.”
 

 We find no error in the Commissioner’s finding, reasoning and conclusion. Counsel for plaintiff concedes that defendant’s obligation with reference to the size of timber to be logged was wholly fulfilled. This being true, obviously, there was no discontinuance of the operation of the saw mill within the contemplation and intendment of the written contract.
 

 In pleading compensation and in urging his reconventional demand respecting the Nicaraguan account defendant was required, as plaintiff’s counsel insists, to itemize the charges claimed and to allege with definiteness the basis therefor. But he, in our opinion, has sufficiently complied with this requisite. Attached to his answer is a statement of the account which covers five full pages. In most instances the items are listed in detail; in the others the charges are described in a manner permitting identification
 
 by
 
 plaintiff. And in the answer defendant sets forth satisfactorily the arrangement by which plaintiff received advances from defendant through Nolen.
 

 ■ The correctness of the amount of the Nicaraguan account, it will be noticed, is not challenged. Plaintiff’s position is that he owes the indebtedness to Nolen, not to defendant. Thus, his- counsel, to quote from his brief, states: “It is to be understood that subject to objection of inadmissibility, plaintiff acquiesces in the Commissioner’s holding as to plaintiff owing for items on the Nicaraguan account. But to whom? Plaintiff’s complaint is mainly that the Commissioner found plaintiff indebted therefor to> defendant when the evidence is conclusive that this indebtedness was to Nolen and not to defendant. Naturally, plaintiff strenuously protests against double liability and having to pay defendant after Nolen’s claim and proceeding against plaintiff.”
 

 The basis for this position, as the reference made to “Nolen’s claim and proceeding against plaintiff” indicates, seems to be a seizure in Nicaragua at the instance of Nolen of some of plaintiff’s equipment. The circumstances surrounding this seizure, as well as the exact indebtedness for pay
 
 *141
 
 ment of which it issued, are not clearly-shown by the record. It does appear that Nolen personally claims from plaintiff some amount in the neighborhood of $3200. With reference to this claim, however, Nolen testified: “Q. Mr. Nolen, Mr. Williams has stated that there are a number of these items that he admits are due, but doesn’t know whether they are due to Mr. Robinson or you, and he does not want to be in position of paying those items twice. What do you say to that ? A. He will not have to pay any item twice. The only thing I am looking for is any amount over what Mr. Robinson is to pay him — any amount over that. That’s the only thing.”
 

 And, during the course of the trial, defense counsel stated: “Well, we are willing to forego the reconventional demand. We are perfectly willing not to- ask for any judgment in reconvention. All we want is to offset to the extent- of plaintiff’s claim monies advanced by Robinson.”
 

 The quoted testimony and statement, which in effect are waivers on the parts of Nolen and defendant respectively, should provide protection for plaintiff to the extent of the charges pleaded in compensation by defendant.
 

 But irrespective of the waivers, it can only be concluded from the evidence that the discussed Nicaraguan account was-plaintiff’s indebtedness to defendant, not to-' Nolen. Defendant, the evidence discloses,, financed both plaintiff and Nolen; and No-len, in delivering the supplies and funds to plaintiff, served as defendant’s agent. Each month Nolen prepared three copies of a detailed statement showing what plaintiff had received during the preceding month. Two copies went to plaintiff’s representative in Nicaragua who in turn forwarded one to plaintiff in New Orleans; •the third was sent to defendant. The latter, on receipt of each statement, entered the charges on his books at his New Orleans office. Almost weekly during the operations plaintiff went to that office and checked the entered charges, and at no time did he claim that they were due and owing to Nolen. Plaintiff’s own testimony indicates, in fact, that throughout such period he understood that his indebtedness was with defendant; he disputed defendant’s right to set off the charges against his claim only after Nolen subsequently had resorted to the seizure of his equipment.
 

 For the reasons assigned the judgment is affirmed.
 

 O’NIELL, C. J., takes no part.
 

 MOISE, J., recused.